My name is John Gorman, I'm a Federal Public Defender for Guam, and I represent Mr. Gurumoorthy. I'd also like to preserve a few minutes for rebuttal. We're here today because Mr. Gurumoorthy charges that the additional 24 months that the District Court added to his sentence was procedurally and substantively unreasonable. His original sentence under the guidelines... I mean, procedurally unreasonable is a concept that I can't grasp. Procedurally in error I can grasp. Procedurally in error. And the reason it is procedurally in error, there's a couple reasons why this sentence is procedurally in error. The first is this is a substantial deviation. It's almost double Mr. Gurumoorthy's sentence. As I noted earlier, his original guidelines were 24 to 30 months, and the court added another 24 months. And the first reason that there is procedural error is the court provided no explanation for this substantial deviation. And the case law is clear that when there is a substantial deviation, the court must provide an explanation. Well, he instinctively provided an explanation. The court did provide an explanation, but it never replied to the defense's reasons. I'm sorry. No, go ahead. We'd love to see if he provided a reason. He did provide a reason. Now, maybe you want to attack the reasons he provided, but he provided reasons. I think it's a nice record. I agree. The court did provide reasons, and I would love to attack the reasons. The reasons are laid out in our excerpt of records, and they only take up two pages. This is a substantial deviation, and when you look at pages 9 through 11 of our excerpt of records, it's two pages only to lay out what the judge's reasons were. And I can read them to you. I know this is tiresome to have a transcript read to you. You can read them, but you can say for yourself that we have read them. Okay. Well, when you read them, what does she say? I will skip the tiresome part. She says there's a probability that other people could have been hurt. That is the reason the court lays out the substantial deviations. They say, well, other people could have been hurt, and they could have been hurt more badly. So it's a completely speculative argument. It's even more speculative because there is no evidence that he got any money at all from this criminal adventure. When you look at the record, he went to, when he first came to Guam, he got his card, and he got his encoding machine. He went to five different banks, made numerous attempts to get money. What did he come up with? Zero. He is a very hapless criminal. So we know for sure what Mr. Groom was he got here. Zero. Now, the government says time and time again that he started stealing these ID numbers. No, no, no, no. There's no evidence he ever stole them. He was in possession. These are things that are floating around the Internet. He got a hold of these numbers. Never stole them. He was in possession. And he never, there is no evidence, at least if the evidence goes against it, that he ever got any evidence. So for the court then to say, even if there is no evidence that he got any money, and then to say, well, there's a chance he could have hurt people worse. It's pure speculation. And the speculation isn't even based on the record. Let me ask a question here. See if I understand your argument correctly. If I don't, then you correct me. You believe the number of potential victims was taken into account twice in your client's sentence. Once in an enhancement based on monetary loss. And again in departure made at least in part to account for the number of potential victims. But don't the guidelines make clear that it's okay to consider both the total loss and the number of victims? And I'm speaking specifically of 2B1.1, subsection B1, sets forth enhancements based on the dollar value loss. And subsection B2 sets forth the enhancements based on the number of victims affected. Now you're saying that the victims were only potential victims and not real victims? The 142 were. Now you're right in terms of B2. There is, the court could go up two levels, not six as they did in this case, for more than 10. That never came out of sentencing. The court never relied on that. There could be a two-level bump there. Absolutely. But the six-level bump based on the same individuals is hard. The numbers are a little bit confusing here, especially when you look at the government's exhibit. There were 142 potential victims, but only 19 victims suffered any loss over $500. It came to a figure of $23,000-something. So the court is correct. A potential two-level bump under B2 could be applied, but certainly not a six-level bump. And that's another reason why the case should be re-enacted. There was a mistake made there. The problem is that you said a moment ago that this was a helpless criminal that didn't get any money. Now you're talking about $23,000. Well, these accounts were accessed. It is unclear who accessed them. There's no evidence that my client accessed them. When you look at the government's exhibit, and that's laid out in the excerpt's record, it lists the losses, but it doesn't list where the losses happened and when the losses happened. So for the purpose of sentencing, we didn't contest those because we didn't feel it hurt him that badly for the 10-level bump. But there's no evidence as to when that money was taken and where it was taken. So there's nothing to link my client to. And you can say it was reasonably foreseeable, even though conspiracy wasn't charged, that it was somehow involved, but there actually was no evidence. But don't make the argument your client could have been charged with aggravated identity theft with the fact that the potential loss was very likely over $120,000 used in the guideline range. What is your response to that? Again, on the second one, I would argue you cannot sentence on the potential for loss, and especially substantial deviations like this. The first part of your sentence was the aggravated identity theft. They chose not to, and it's noted twice in the record. It's actually in the government's excerpt of the record. There are two references to why. Where did this 24-month figure come from? Because the government from the start has always said 24 months. And that's what the judge said, where did the 24 months come from? And they said, we chose. These are the exact words. I can give you the page reference if you'd like. Twice the government said a sentencing. We chose not to bring an aggravated identity theft case because we'll get him at sentencing. Those are almost exact words. Well, that is inappropriate. If they wanted that 24 months, they need to bring it, and they need to do it in the charging process. Not wait, oh, let's bring it out, and we'll do it at sentencing. And that's why these reasons for the increase are so weak, because they are potential. The government said, well, we're not going to charge him for the extra 24 months. We'll get him at sentencing. Then when it came time for sentencing, how can we justify this 24 months? They looked to this very low-use provision, 5K2.21. That doesn't apply. Then they said, well, just under the general properties of the booker. But neither, those are both potential. The reason they wanted the 24 months is because they chose not to charge the identity theft. And they said, let the judge apply it later. And that is wrong. That is error. And that's up to my two minutes. I'm the Chief's Court. Karen Johnson here for the United States again. The counsel of the books is Guidelines Section 2B1.6. That changes the entire complexion of this case. The issue is whether there is an abuse of discretion on the part of the court by giving what are, in effect, what is referred to as a variance or a sixth-level variance, an extra 24-month sentence. This isn't in the record. But let me ask, why didn't you charge him with aggravated theft? Because here the argument made by opposing counsel sounds rational to me. They don't have to plead or prove it. And yet they're sentencing him as if they had planned to prove. Yes, well, my first course caught on this. This is not my case. But, in fact, I asked Ms. Marovic and they did the same thing. And the answer is this. It's that they arrested him. They didn't know what they had. He went in and pled guilty to the initial indictment while the inmates were still being typed up to get the information out of Europe. Because these all have all accounts from the English and Scottish banks. And it took four or five months for the information to come down. They made an executive policy decision to, in fact, actually talk to Washington about whether they should recharge the superseding indictment. And the opinion of Mary Healy from that unit in Washington was that it would be adequate to proceed as a sentencing factor rather than bring superseding indictment. I personally would never do that. I like to charge exactly what it is I intend to have sentencing on. I appreciate your frankness. Oh, absolutely not. It complicates things. Here we are and we shouldn't be here. We are here, however, because 5A2.1 does exist and it does allow the government to do exactly what they did in this case. You have two issues, two criteria that have to be met. First is that the identities that could have been charged. And, indeed, it could have been. There is no question that you have, I think, 217 means of identification belonging to 114 real people. That puts you under 1028A, the aggravated identity theft. It could have been charged. If you look at 5A2.21, it does not put criteria on why the government did or did not charge a particular conduct. It indicates that it is a potential charge. Ms. Jansen, the moment that the court appears doesn't fill in the gaps. What he is arguing, and you may want to tell us why it's wrong, the court said why the sentence was as it was, right? Considering the conduct, I think. Exactly. The range of sentencing, as I understand it, you tell me, was for the crime with which he was charged and to which he got guilty. That is true. And then somewhere within this range, you've got the line between the top and the bottom. So they moved towards the top. You want to know why did you go that high? And they gave us reasons. Now, doesn't he have to say something to say why that was invalid? Exactly. And what I'm asking this court to say is that 5A2.1 is the applicable statute for justifying the sentence. And that is that the government could have brought these charges. It chose not to. Why it did not is not one of the criteria for filing 5A2.21. It's simply that the government, for any other reason, chooses not to bring the charge. Nevertheless, there is no question that the defendant did commit identity theft under 102088. I think that's a given. Counsel can see if it's an argument. The second criteria to apply 5A2.21 is that the defendant's conduct did not enter into a determination of the guidelines range that has otherwise been accounted for. The guidelines range was calculated under 2B1.1. That was 2B1.6 for aggravator and identity theft. It was not introduced until 2005 after the statute was passed. What the court is doing is it's using its discretion to take into account something that is not considered in 2B1.1. And that is that this involved the means of identification of 142 people. That is what caused the upward bump, the upward variance of two years. It's been the court's discretion to do that. I think that 2. . . I was thinking in terms of sentencing. Say you have someone like the defendant with 142 counts of aggravated identity theft. How would you sentence someone like that? In theory, each of the counts could run consecutively. It would not be, I think, proper for the court to impose that kind of sentence. What you could do, though, if I were the judge, I would look at 2B1.1. I would look at the number of victims. I would look at the potential loss. And then I would also factor in the fact that these are real people, and I would arrive at the sentence that the court did. To say that she justified her reason in two pages is not true. You read the colloquy. It goes on page after page of dialogue between the defense and the prosecution in terms of how the court was reasoning and why it reached the reason it did. It is not simply two pages. This went on for almost 50 pages. And I think that the court did not abuse its discretion. That is the criteria. The conduct that she sentenced on is undisputably heard and is justified by the guidelines and by 5A2.20. And I might add 2B1.6. You know, just for the record, it is in the government's excerpt to records, page 25 and page 55, where they state that we chose not to charge the aggravated identity theft because this court allowed the government to argue for a number of parties. So, again, I would argue, when they look to 5A2.21 or then they fall back on Booker, this is merely pretextual. Right from the start, they said, and that's where this 24-month figure came from. Now, the reason why 5A2.21 doesn't apply is the second prong of 5A2.21. It says something that has not been taken into account elsewhere in the guidelines. If you remember, he started out with an offense level of six. He got a very sizable 10-level bump under 2B1.1. Then another two-level bump for using an access device and another two-level bump for outside the country. So, he has received already a substantial number of enhancements. He went from a level six to a level 20. He went from a zero to six sentence to a 24 to 30-month sentence. So, the guidelines have already taken into account all the aggravated factors in this case. And then at the end, the government says, you know what, let's tack on another 24 months. And that's wrong. And the court, and you will look at the record, the court never explained. Our objections were 5A2.21. It doesn't apply. It doesn't meet the factors under 3553A. And the court never dealt. These were objections raised by the defense. The court never dealt with those objections. If you look at the record, the record is clear. And when a court fails to meaningfully address defense counsel's objection, that is procedural error because it robs the appellate court and forecloses meaningful appellate review when the court does not deal with and expressly deal with the defense counsel's objection. Yes, Your Honor, briefly. Again, and this is double-counting. I would ask also for you to look at that. Kind of a subset or part of the 5A2.21 argument. The 142 victims are a subset. They're the same people who were counted under 2B1.1. There were 217 access devices. Actually, there were 203 people altogether. These 142 people are just a subset. They're the same people. That's why it's double-counting. We're counting twice the exact same people. And we gave them, under 2B1.1, everyone who did suffer anything over 500, that loss was counted. People who suffered no loss or minimal loss, $500 was given to them. But the guidelines, as I read them correctly if I'm wrong, permit you to count the number of victims. And in addition, you can count the loss. I mean, they're two separate things. And you're saying they counted both of them twice. What are you saying? Well, because then you get the confusion over victims. Victims are someone who suffered actual pecuniary harm. In this case, there's only 19 of those people. Therefore, 2B1.1.B2, you get a two-level bump for more than 10. But all these other people suffered no pecuniary harm. That's our argument. And therefore, you cannot decide. You cannot increase the sentence. You know, there is, you'll notice in the sentencing hearing, there was always talk about the victims or the intended victims. The probation officer told the judge, these 142 people, they're not victims under the guidelines. And she said, well, I think they're victims. I'm not going to call them intended victims. They aren't. So he could have gotten a two-level bump, which he didn't get, for the number of victims, as you point out. Certainly, a six-level bump is not warranted under the guidelines. Thank you. Thank you very much. All right. The case of the U.S. Supreme Court Supreme Court remotion is submitted.
judges: Farris, Nelson D. W., Bea